1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9   MARTIN ROMERO,

10              Plaintiff,                    No. CIV S-05-0379 GGH

11        vs.

12   JO ANNE B. BARNHART,
    Commissioner of Social
13   Security,
                                              ORDER
14
            Defendant.
15   _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits

18   ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social

19   Security Act ("Act").  For the reasons that follow, plaintiff's Motion for Summary Judgment or

20   Remand is granted in part, the Commissioner's Cross Motion for Summary Judgment is denied,

21   and the Clerk is directed to enter judgment for the plaintiff.   This case is remanded for further

22   findings pursuant to sentence four of 42 U.S.C. §405(g).

23   BACKGROUND

24          Plaintiff, born April 8, 1962, applied for disability benefits on March 12, 2002,

25   with a protective filing date of February 26, 2002. (Tr. at 61, 241.)  Plaintiff alleged he was

26   unable to work since February 26, 2002, due to diabetes, vision problems, pain in left kidney,

1  dizziness, vomiting, inability to eat, stand and walk, stomach aches, and mental stress.  (Tr. at

2  106, 37.)  In a decision dated December 15, 2003, ALJ James N. Baker determined that plaintiff

3  was not disabled.[1]  (Tr. at 19-25.)  The ALJ made the following findings:

> 1.  The claimant meets the nondisability requirements for a
>     Period of Disability and Disability Insurance Benefits set
>     forth in Section 216(i) of the Social Security Act and is
>     insured for benefits through the date of this decision.
>
> 2.  The claimant has not engaged in substantial gainful activity
>     since the amended onset of disability.
>
> 3.  The claimant has an impairment or a combination of
>     impairments considered "severe" based on the requirements
>     in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).
>
> 4.  These medically determinable impairments do not meet or
>     medically equal one of the listed impairments in Appendix
>     1, Subpart P, Regulation No. 4.

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

5.     The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.     The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§404.1527 and 416.927).

7.     The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8.     The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

9.     The claimant has a 6th grade education and is unable to communicate in English (20 CFR §§ 404.1564 and 416.964).

10.    The claimant has no transferable skills from any past work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11.    The claimant has the residual functional capacity to perform a wide range of light work as discussed in the body of the decision (20 CFR §§ 404.1567 and 416.967).

12.    Based on an exertional capacity for light work, and the claimant's age, education, and work experience, Medical-Vocational Rule 202.16, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

13.    The claimant's capacity for light work is substantially intact and has not been compromised by any significant nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

14.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Tr. at 24.)

ISSUES PRESENTED

Plaintiff has raised the following issues: (A) Whether the ALJ Should Have Used the Testimony of a Vocational Expert based on plaintiff's limitations; (B) Whether the ALJ Failed to Explain Why He Did Not Credit the Opinion of Dr. Lopez, a Consulting Psychiatrist;

1  and (C) Whether the ALJ's Residual Functional Capacity Assessment is not Based on Substantial

2  Evidence.

3  LEGAL STANDARDS

4          The court reviews the Commissioner's decision to determine whether (1) it is

5  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

6  the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

7  Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v.

8  Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might

9  accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

10  1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

11  (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical

12  testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

13  2001) (citations omitted). "Where the evidence is susceptible to more than one rational

14  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

15  Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

16  ANALYSIS

17      A.  Whether the ALJ Should Have Used the Testimony of a Vocational Expert

18          Plaintiff contends that the ALJ should have utilized a vocational expert based on

19  his limitations in near and far acuity, limitation to occasional balancing and stooping, and need to

20  avoid concentrated exposure to hazardous moving machinery and unprotected heights.

21          The Guidelines in table form ("grids") are combinations of residual functional

22  capacity, age, education, and work experience.  At the fifth step of the sequential analysis, the

23  grids determine if other work is available.  See generally Desrosiers v. Secretary of Health and

24  Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

25          The grids may be used if a claimant has both exertional and nonexertional

26  limitations, so long as the nonexertional limitations do not significantly impact the exertional

4

capabilities.[2] <u>Bates v. Sullivan</u>, 894 F.2d 1059, 1063 (9th Cir. 1990), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>,

<u>Bunnell v. Sullivan</u>, 947 F.2d 341 (9th Cir. 1991) (en banc).  <u>See</u> <u>Desrosiers</u>, 846 F.2d at 577

("[T]he fact that a non-exertional limitation is alleged does not automatically preclude

application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1996).  The ALJ

must weigh the evidence with respect to work experience, education, and psychological and

physical impairments to determine whether a nonexertional limitation significantly limits

plaintiff's ability to work in a certain category.  <u>Desrosiers</u> 846 F.2d at 578 (Pregerson, J.,

concurring).  "A non-exertional impairment, if sufficiently severe, may limit the claimant's

functional capacity in ways not contemplated by the guidelines.  In such a case, the guidelines

would be inapplicable."  <u>Desrosiers</u>, 846 F.2d at 577-78.  The ALJ is then required to use a

vocational expert. <u>Aukland v. Massanari</u>, 257  F. 3d. 1033 (9th Cir. 2001).

        In this case, the ALJ gave plaintiff the benefit of the doubt in concluding that he

could do a wide range of light work, based on the opinion of the State Agency physicians.  (Tr. at

22.)  In contrast, consulting internist Dr. O'Brien had found that plaintiff could do all work,

without limitation.  (<u>Id.</u> at 180.)  Although the ALJ found that plaintiff could not do his past work

as a field worker, he found that he could do unskilled light work as limited by the ability to

occasionally climb, balance, stoop, kneel, crouch, and crawl, limitations in near and far visual

acuity, and with no concentrated exposure to hazardous moving machinery and unprotected

heights.  (<u>Id.</u> at 23.)  These limitations were based on those prescribed by the SSA physician on

April 19, 2002, wherein plaintiff's exertional limitations were found to be limited to lifting 20

---

[2]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary; <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).  Non-exertional activities include mental, sensory, postural, manipulative and environmental matters which do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; <u>Cooper</u>, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids."  <u>Penny v. Sullivan</u>, 2 F.3d 953, 958 (9th Cir. 1993).

1  pounds occasionally and ten pounds frequently, standing and/or walking for six hours, sitting for

2  six hours, and unlimited pushing and pulling.  (Tr. at 164.)  Climbing, balancing, stooping,

3  kneeling, crouching, and crawling were limited to occasionally.  (Id. at 165.)  Near and far acuity

4  were limited.  (Id. at 166.)  This physician also advised against concentrated exposure to hazards

5  such as machinery and heights due to plaintiff's dizziness.  (Id. at 167.)

6          Plaintiff points out that his diabetes has affected his vision such that it has ranged

7  from 20/40 to 20/80.  (Tr. at 182.)  He also has pterygia[3] in both eyes, blurry vision, scattered

8  hemorrhages, and diabetic neuropathy.  At the time pterygia was diagnosed, plaintiff's corrected

9  vision was 20/25 in both eyes,[4] indicating that although this disorder can distort the vision, it did

10 not impose a significant limitation on his eyesight.  (Tr. at 216.)  This record, dated August 20,

11 2002, was the most recent information before the ALJ.  Plaintiff submitted more recent evidence

12 to the Appeals Council; however, the Appeals Council found that it did not warrant changing the

13 decision because plaintiff had not followed prescribed treatment and his symptoms were based

14 on short term side effects from that failure.  (Tr. at 8.)  This record, dated September 1, 2003,

15 indicates that plaintiff's corrected vision was 20/40, that he ran out of Diabinese two months ago,

16 and dropped his Arandia in water, ruining this medication.  (Tr. at 286, 280, 287.)  The most

17 recent eye exam, dated January 5, 2004, indicates vision of 20/40 and 20/80.  (Tr. at 290.)  This

18 record also indicated scatter hemorrhages and pterygia.  (Id.)

19 \\\\\

20 \\\\\

21 \\\\\

22

23      [3] Pterygium is "a  winglike structure, applied especially to an abnormal triangular fold of
   membrane, in the interpalpebral fissure, extending from the conjunctiva to the cornia, being
24 immovably united to the cornea at its apex, firmly attached to the sclera throughout its middle
   portion, and merged with the conjunctiva at its base."  Dorland's Illustrated Medical Dictionary
25 1093 (26th ed. 1985).

26      [4] Uncorrected vision was 20/200 at this time.

1    Defendant is correct in noting that a minor loss in vision does not automatically

2    preclude application of the grids, citing to Social Security Ruling 85-15:

3         4. Visual Impairments

4         As a general rule, even if a person's visual impairment(s) were to
          eliminate all jobs that involve very good vision (such as working

5         with small objects or reading small print), as long as he or she
          retains sufficient visual acuity to be able to handle and work with

6         rather large objects (and has the visual fields to avoid ordinary
          hazards in a workplace), there would be a substantial number of

7         jobs remaining across all exertional levels. However, a finding of
          disability could be appropriate in the relatively few instances in

8         which the claimant's vocational profile is extremely adverse, e.g.,
          closely approaching retirement age, limited education or less,

9         unskilled or no transferable skills, and essentially a lifetime
          commitment to a field of work in which good vision is essential.

10

11   Defendant also appropriately cites to SSR 83-14 in regard to the visual

12   impairment necessary to erode the occupational base:

13        Where a person has a visual impairment which is not of Listing
          severity but causes the person to be a hazard to self and

14        others–usually a constriction of visual fields rather than a loss of
          acuity–the manifestations of tripping over boxes while walking,

15        inability to detect approaching persons or objects, difficulty in
          walking up and down stairs, etc., will indicate to the decisionmaker

16        that the remaining occupational base is significantly diminished for
          light work (and medium work as well).

17

18   Nevertheless, all of plaintiff's nonexertional impairments must be considered in

19   combination.  By specifically limiting their directives to one type of situation, these rulings seem

20   to indicate that if a claimant has only one nonexertional impairment, the occupational base is not

21   eroded.  By reverse implication, more than one nonexertional impairment may very well

22   significantly impact the occupational base.  For example, SSR 85-15 states that where balancing

23   (and climbing) is the *only* limitation, it would not usually significantly impact the world of work;

24   however, certain light jobs would be ruled out, such as construction painter.  (Id. at *6.)

25   (emphasis added.)  This ruling also states that occasional stooping leaves the light work base

26   intact.  (Id. at *7.)  See also SSR 83-10 (noting that majority of light work jobs can be done with

7

occasional rather than frequent stooping).  SSR 85-15 does not address the situation here, where plaintiff has limitations on stooping *and* balancing, in addition to his other limitations.  The same ruling separately addresses the restriction from unprotected elevations and working near dangerous moving machinery.  (Id. at *8.)  It also limits its advisory opinion by stating that " a person [] who is restricted *only* from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels."  (emphasis added).

SSR 83-14 advises that although a particular nonexertional limitation may have very little effect on the range of work, an *additional* nonexertional limitation may so reduce the range of work that the claimant may be found disabled.  (Id. at *3.)  This ruling advises the use of a vocational expert in more complex situations.  The ruling gives examples of limitations which do and do not require vocational testimony.  A visual impairment which causes a person to be a hazard to self and others, such as tripping over boxes or not being able to detect approaching people or things, will significantly diminish the light work base.  On the other hand, inability to ascend and descend scaffolding will not significantly affect the unskilled light work base.  (Id. at *5.)  Restrictions between these two examples will usually require vocational expertise.  In this case, plaintiff has not just one but several nonexertional limitations.

Furthermore, plaintiff points to several occupations which cannot be performed because of certain limitations.  For example, frequent stooping is required for table hand, paper inserter, and machine feeder.  Exhs. D, E, and F to plaintiff's motion.  Despite the statements in SSRs 83-14 and 85-15 that light work usually involves only occasional stooping (up to one third of a work day), there are apparently light jobs which require more.  Plaintiff also points to other unskilled light jobs which involve more than occasional balancing, such as lead pony rider, singing messenger, and board attendant.  Exhs. A, B, C to plaintiff's motion.  It is unknown how many more jobs are precluded because of all of plaintiff's nonexertional limitations.

\\\\\

1    Although plaintiff's mental assessment was found to only mildly limit or not

2    significantly limit him, this nonexertional impairment may also affect the light work base when

3    considered with the other limitations.  Dr. Lopez, a psychiatrist, evaluated plaintiff on August 8,

4    2003, at the request of the state agency, and with the benefit of numerous medical records.  (Id. at

5    219.)  He diagnosed depression with a GAF of 60.[5]  (Tr. at 223.)  Dr. Lopez explained that

6    plaintiff did not have a serious depression.  (Id. at 224.)  He found that it was significant enough

7    to warrant treatment, however.  Plaintiff was found to be not totally disabled from working on

8    this basis alone.  Plaintiff could comprehend and follow instructions, but was somewhat impaired

9    in relating to others in the workplace.  He was somewhat impaired in performing simple and

10   repetitive tasks, and complex and varied tasks, due to low energy and sleep problems.  (Id. at

11   225.)  Prognosis was fair.  (Id.)  In completing the assessment form, Dr. Lopez found that

12   plaintiff's ability to carry out short and simple instructions was not limited, but his ability to

13   carry out detailed instructions, which were not repetitive, was mildly limited as was his ability to

14   maintain attention and concentration for extended periods.  (Id. at 227.)  Plaintiff was also found

15   to be mildly limited in ability to sustain an ordinary work routine without special supervision,

16   work near others without being distracted, and make simple work-related decisions.  Plaintiff

17   was mildly limited in all forms of social interaction and ability to respond to changes in the work

18   setting, travel in unfamiliar places, and set realistic goals or make independent plans.  (Tr. at 227-

19   28.)  Dr. Lopez checked the box which stated that "this individual is the type of person for whom

20   a routine, repetitive, simple, entry-level job would serve as a stressor which would *exacerbate*

21   instead of mitigate psychological symptoms in the workplace."  (Id. at 228.)

22   \\\\\

23

---

24        [5]  GAF is a scale reflecting the "psychological, social, and occupational functioning on a
     hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental
25   Disorders 32 (4th ed.1994) ("DSM IV").  According to the DSM IV, a GAF of 60 indicates
     moderate symptoms such as flat affect, circumstantial speech, occasional panic attacks, or
26   moderate difficulty in functioning as in few friends or conflicts with peers or co-workers.

1    The ALJ did not adopt or reject this opinion, but separately concluded that

2 plaintiff had "mild restrictions in activities of daily living, mild difficulties in social functioning,

3 mild difficulties in maintaining concentration, persistence or pace and no episodes of

4 decomposition." (Id. at 22.)  Based on this conclusion, the ALJ found that plaintiff could do a

5 wide range of light work.

6    SSR 85-15 states:

7    The basic mental demands of competitive, remunerative, unskilled
     work include the abilities (on a sustained basis) to understand,
8    carry out, and remember simple instructions; to respond
     appropriately to supervision, coworkers, and usual work situations;
9    and to deal with changes in a routine work setting.  A substantial
     loss of ability to meet any of these basic work-related activities
10   would severely limit the potential occupational base.

11   It is true that "not every malady of a 'nonexertional' nature rises to the level of a

12 'nonexertional impairment.'"  Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir.1984).  Use of the

13 grids "cannot be defeated by low level personality and emotional disorders····"  Id.  Nevertheless,

14 if the nonexertional impairment reduces the residual functional capacity, use of the grids is

15 inappropriate.  In this case, the portion of Dr. Lopez' opinion, which was expressly adopted by

16 the ALJ, does appear to reduce plaintiff's residual functional capacity.[6]

17   It is additionally interesting to note that the ALJ found plaintiff could do a *wide*

18 range of light work, rather than the *full* range of light work.  (Tr. at 22, 24.)  If this use of term

19 was intentional, it must then be determined whether the occupational base has been eroded and to

20 what extent.  See Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

21   Because plaintiff's numerous restrictions may, taken together, have a significant

22 impact on his ability to do the full range of light work, and because the record contains no

23 information whether plaintiff's nonexertional impairments significantly limit the range of jobs

24 available to him, reliance on the grids was improper.  The ALJ should have consulted a

25

26   [6] The ALJ's failure to discuss the remainder of Dr. Lopez' opinion is discussed in the
     next section.

1   vocational expert to evaluate the impact of plaintiff's limitations on his ability to work.

2         B. Whether the ALJ Committed Error When He Failed to Explain Why He Did Not

3   Credit the Opinion of Dr. Lopez, a Consulting Psychiatrist

4         Plaintiff contends that the ALJ discussed only a small portion of Dr. Lopez's

5   report, and ignored the remainder of this psychiatrist's evaluation.[7]

6         The opinion of an examining physician is, in turn, entitled to
      greater weight than the opinion of a nonexamining physician.
7     Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990); Gallant v.
      Heckler, 753 F.2d 1450 (9th Cir.1984). As is the case with the
8     opinion of a treating physician, the Commissioner must provide
      "clear and convincing" reasons for rejecting the uncontradicted
9     opinion of an examining physician.

10  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).

11        In this case, the ALJ's only discussion of Dr. Lopez's evaluation are the

12  statements that Dr. Lopez diagnosed plaintiff with depression, NOS with a GAF of 60, and that

13  plaintiff was not significantly impaired in the ability to carry out short simple tasks.  (Id. at 21.)

14  The ALJ later limited plaintiff as follows, presumably taking these limitations from a portion of

15  Dr. Lopez's evaluation, but without referencing it:  "the claimant has mild restriction in activities

16  of daily living, mild difficulties in social functioning, mild difficulties in maintaining

17  concentration, persistence or pace and no episodes of decompensation."  (Id. at 22.)  Contrary to

18  defendant's assertion that "the ALJ did note that Dr. Lopez' extreme findings were inconsistent

19  with those of Dr. Alvarado," and were "internally inconsistent," the ALJ did no such thing.  He

20  did not mention the remainder of Dr. Lopez's evaluation, and did not reject it.  Defendant may be

21  correct in arguing, at the present time, that there may be inconsistencies in Dr. Lopez' report;

22  however, defendant gives the ALJ credit for this argument where none is due as the ALJ did not

23  discuss them.

24  \\\\\

25

26        [7]  Much of that evaluation has been outlined in the previous section.

1   As set forth in the previous section, Dr. Lopez imposed other limitations on

2   plaintiff's residual functional capacity which may need to be addressed by a vocational expert.

3   On remand, the ALJ shall credit this opinion as required by law, and question the vocational

4   expert as to the limitations imposed by that evaluation. Lester v. Chater, 81 F.3d 821, 834 (9th

5   Cir. 1995).

6   C.   Whether the ALJ's Residual Functional Capacity Assessment is Based on Substantial

7   Evidence

8   Plaintiff objects to the ALJ's reliance on outdated residual functional capacity

9   assessments rather than a more recent assessment, conducted on July 12, 2004. (Tr. at 290.)[8]

10  The problem is that this assessment was made after the ALJ's decision.  On submission to the

11  Appeals Council, it was determined that because the ALJ's decision concerned the time period

12  through December 16, 2003, the new evidence did not affect the decision whether plaintiff was

13  disabled on or before that date.  Plaintiff was advised to reapply if he wanted consideration of a

14  disability occurring after December 16, 2003. (Tr. at 8.)  This report is nonetheless part of the

15  administrative record, as it was considered by the Appeals Council in its denial of review.  (Tr. at

16  7-10.)[9]  In any event, the Appeals Council is correct in determining that this record post-dates the

17  time period under consideration, and may only be considered in a new application.

18  \\\\\

19  \\\\\

20

21      [8]  The RFC portion of the assessment is not contained in the transcript.  Plaintiff has
    attached it as Exhibit G.  See Tr. at 8, 278.

22

23      [9]  If the Appeals Council denies review, the decision of the ALJ is the final decision of
    the Secretary.  If the Appeals Council accepts review and renders a decision, the final decision of
    the Secretary is that of the Appeals Council.  20 C.F.R. § 404.981; Reyes v. Bowen, 845 F.2d

24  242, 244 (10th Cir. 1988).  The situation here is a hybrid of the usual situation where the Appeals
    Council has denied review, but has nevertheless ruled upon the newly submitted evidence.  In

25  these circumstances, the district court reviews the decision of the ALJ as supplemented by the
    Appeal Council's comments about the new evidence.  This "new" evidence is part of the record

26  before the court.

1   CONCLUSION

2           The decision whether to remand a case for additional evidence or simply to award

3   benefits is within the discretion of the court.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.

4   1990).  If additional administrative proceedings would remedy the defects in the decision,

5   remand is appropriate.  Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); Barbato v.

6   Commissioner of Social Security Admin., 923 F. Supp 1273, 1277-78 (C.D.Cal. 1996).  To avoid

7   the possibility of an inequitable result, this case should be remanded to enable the ALJ to obtain

8   vocational testimony regarding the effect of all of plaintiff's nonexertional limitations on his

9   ability to do light work, and whether there is any other work he can do.  The ALJ must consider

10  the opinion of Dr. Lopez as set forth *supra*.

11          Accordingly, the court finds the ALJ's assessment is not fully supported by

12  substantial evidence in the record or based on the proper legal standards.  Plaintiff's Motion for

13  Summary Judgment or Remand is granted in part, the Commissioner's Cross Motion for

14  Summary Judgment is denied, and the Clerk is directed to enter judgment for the plaintiff.   This

15  case is remanded for further findings pursuant to sentence four of 42 U.S.C. § 405(g).

16  DATED: 8/30/06

                                    /s/ Gregory G. Hollows
17                                  _____
                                    GREGORY G. HOLLOWS
18                                  U.S. MAGISTRATE JUDGE

    GGH/076
19  Romero0379.ss.wpd

20

21

22

23

24

25

26